IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GREG RICHARDSON, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO. 08-3900 |
| | : | |
| v. | : | |
| | : | |
| CSS INDUSTRIES, INC., et al., | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM

Jones, J.                                                                                                       July 27, 2009

Before the Court is Defendant CSS Industries, Inc.'s ("CSS") Motion for Judgment on the Pleadings (Doc. Nos. 12 & 13), Plaintiff's Response in Opposition thereto (Doc. No. 15), and CSS's Reply (Doc. No. 23). For the reasons that follow, CSS's Motion will be granted to the extent that it seeks dismissal of Plaintiff's claims against CSS for failure to state a claim upon which relief can be granted.

**I.      Relevant Procedural History**

On August 15, 2008, Plaintiff Greg Richardson filed a Complaint against CSS and its subsidiary, Paper Magic Group, Inc ("PMG"). Plaintiff claims that CSS and PMG violated the Family and Medical Leave Act ("FMLA") (Count I) and the Employee Retirement Income Security Act ("ERISA") (Count II). On November 21, 2008, CSS filed an Answer to the Complaint. On December 8, 2008, CSS filed a Rule 12(c) Motion for Judgment on the Pleadings. On December 22, 2008, Plaintiff filed a Response in opposition to CSS's Motion.

CSS filed a Reply on February 20, 2009.

## II.     Factual Allegations

The Court recites the facts as alleged in the Complaint and as viewed in the light most favorable to Plaintiff.

CSS is the parent corporation of PMG.  (Compl. ¶ 2.)  Plaintiff was employed with PMG from April 12, 1999, until he was terminated on March 23, 2007.  (Compl. ¶¶ 7, 18.)[1]  He held the position of Superintendent from October 2002 until his termination.  (Compl. ¶ 7.)

### A.     FMLA Claim

In early May 2006, Plaintiff requested FMLA leave from PMG.  (Compl. ¶ 8.)  His request was approved, and he took FMLA leave from May 26, 2006, through August 17, 2006.  (Compl. ¶¶ 9-10, 12.)  Upon his return, he was assigned to an "off shift," was assigned more hours than he had previously been assigned, was given more responsibilities, and was required to complete performance evaluations.  (Compl. ¶ 12.)  Plaintiff complained to the Department of Labor, which subsequently cited PMG for failure to reinstate Plaintiff to his former duties, shift, hours, and responsibilities.  (Compl. ¶¶ 13-14.)  Plaintiff claims that the terms and conditions of his employment were changed in retaliation against him for his "use of FMLA leave and/or complaint to the Department of Labor."  (Compl.¶ 14.)  Plaintiff seeks judgment against CSS and PMG, jointly and severally, on his FMLA claims.  (Compl. 3.)

### B.     ERISA Claim

While employed by PMG, Plaintiff anticipated being promoted to the position of plant

---

[1] It appears that Plaintiff's Complaint contains a typographical error, stating that Plaintiff was terminated on March 27, 2007.  (See Compl. ¶ 7.)

manager.  (Compl. ¶ 21.)  He had been groomed for that position over a five-year period. (Compl. ¶ 21.)  PMG failed to promote Plaintiff.  (See Compl. ¶ 16.)  After his termination, Plaintiff learned that Scott Andrews was promoted from Human Resource Manager to Plant Manager.  (Compl. ¶ 22.)  Mr. Andrews was not qualified for that position.  (Compl. ¶ 22.) Plaintiff was more qualified than Mr. Andrews.  (Compl. ¶ 22.)

Plaintiff underwent open-heart surgery in April of 2000, while he was employed by PMG. (Compl.¶ 17.)  In a staff meeting prior to Plaintiff's termination and prior to PMG's failure to promote Plaintiff, Rich Denny, Vice-President of PMG, said that people who were having open heart surgery were costing PMG's insurance company $250,000 per year.  (Compl. ¶ 16.)  Mr. Denny was referring to the increased cost of insurance premiums paid by the company and employees.  (Compl. ¶ 16.)  When PMG terminated Plaintiff on March 23, 2007, PMG informed him that his termination was the result of layoffs.  (Compl. ¶ 18.)  Plaintiff believes that his termination was due, inter alia, to his use of company-sponsored medical insurance benefits. (Compl. ¶ 19.)  Plaintiff also believes that PMG failed to promote him to the position of plant manager because PMG intended to terminate his medical benefits.  (See Compl. ¶¶ 15, 24.)

On his ERISA claims, Plaintiff seeks injunctive relief and damages against CSS and PMG.  (Compl. 5-6.)

### III.  Standard of Review

"After the pleadings are closed – but early enough not to delay the trial – a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  A defendant cannot file a Rule 12(b)(6) motion if it has already filed an answer.  See Turbe v. Gov't of Virgin Islands, 938 F.2d 427, 428 (3d Cir. 1991).  "Nevertheless, Rule 12(h)(2) provides that a defense of failure to state a

claim upon which relief can be granted may also be made by a motion for judgment on the pleadings." Id. In that situation, the court must apply the same standard as under Rule 12(b)(6). See Spruill v. Gillis, 372 F.3d 218, 223 n.2 (3d Cir. 2004) (noting that "[t]here is no material difference in the applicable legal standards" for Rule 12(b)(6) and Rule 12(c) motions). "Judgment will only be granted where the moving party clearly establishes there are no material issues of fact, and that he or she is entitled to judgment as a matter of law." Oxford Assocs. v. Waste Sys. Auth., 271 F.3d 140, 144-45 (3d Cir. 2001). The reviewing court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation and citation omitted); Jablonski v. Pan Am. World Airways, Inc., 863 F.2d 289, 290-91 (3d Cir. 1988)

"If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).

**IV.** **Discussion**

    A.    The Documents Attached To Plaintiff's Opposition Brief Shall Be Excluded.

In its Rule 12(c) motion, CSS argues that it was not Plaintiff's employer for purposes of the FMLA and ERISA. In an attempt to demonstrate that CSS and PMG have "an affiliation that could best be described as parent corporation and affiliate," Plaintiff has attached three exhibits to its brief in opposition to CSS' Motion: two printouts from PMG's website and a copy of CSS's 2008 Annual Report . (Pl.'s Resp. in Opp'n to CSS' Mot. for J. on the Pleadings ("Pl.'s

Resp.") 3; id., Exs. 1-3.) Because the parties have not engaged in discovery, and CSS has not been given an opportunity to present material in support of its contention that it was not Plaintiff's employer, the Court shall not convert CSS' Motion for Judgment on the Pleadings to a Rule 56 motion. See Fed. R. Civ. P. 12(d). Accordingly, the Court shall not consider the exhibits attached to Plaintiff's opposition brief when ruling upon CSS' 12(c) motion. Id. Furthermore, it would be premature for the Court to make factual findings about the relationship between CSS and PMG or the relationship between CSS and Plaintiff at this state of litigation.

      B.      <u>Plaintiff has Failed to State a Claim for FMLA and ERISA Violations by CSS</u>

Plaintiff asserts FMLA interference and retaliation claims against CSS. Under the FMLA, employers are prohibited from interfering with an employee's FMLA benefits. 29 U.S.C. § 2615(a)(1) ("It shall be unlawful for **any employer** to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.") (emphasis added). Additionally, the FMLA bars employers from retaliating against employees for opposing practices made unlawful by the Act. 29 U.S.C. § 2615(a)(2) ("It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter."); 29 C.F.R. § 825.220(c); Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 147 n.9 (3d Cir. 2004).[2]

---

[2] The FMLA defines employer as follows:

    The term "employer"–

    (i) means any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding c

    (ii) includes –

Plaintiff also seeks damages and injunctive relief against CSS for wrongful discharge and failure to promote in violation of Section 510 of ERISA.[3]  To assert a claim under § 510 of ERISA, the alleged conduct must result from **an employer's** adverse action.  "To establish a *prima facie* case under ERISA § 510, an employee must demonstrate (1) **prohibited employer conduct** (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled."  Gavalik v. Cont'l Can Co., 812 F.2d 834, 851 (3d Cir. 1987) (emphasis added).  See also 29 U.S.C. § 1140 (making it "unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan. . . .").[4]

---

> (I) any person who acts, directly or indirectly, in the
> interest of an employer to any of the employees of
> such employer; and
>
> (II) any successor in interest of an employer; . . . .

2611(4)(A)(i - ii) (2008).

[3] On May 13, 2009, the court dismissed Plaintiff's failure to promote claim against PMG because Plaintiff and PMG had no employment relationship when the Plant Manager position was filled.  Likewise, the court finds that Plaintiff and CSS had no employment relationship when the Plant Manager position was filled, and Plaintiff's failure to promote claim against CSS will be dismissed.

[4] ERISA defines employer as follows:

> The term "employer" means any person acting directly as an
> employer, or indirectly in the interest of an employer, in relation to
> an employee benefit plan; and includes a group or association of
> employers acting for an employer in such capacity.

For both his FMLA and his ERISA claims, Plaintiff has failed to allege facts sufficient to attach liability to CSS.  In order for liability to attach to CSS, CSS must have been Plaintiff's employer at the time of the alleged injury.  Plaintiff alleges that PMG was his employer and that CSS was the parent corporation of PMG.  However, a parent corporation is not necessarily considered an employer for the purposes of FMLA or ERISA liability.

In the Third Circuit,"mere ownership of a subsidiary does not justify the imposition of liability on the parent."  Pearson v. Component Tech. Corp., 247 F.3d 471, 484 (3d Cir. 2001). See also id. ("The corporate form was created to allow shareholders to invest without incurring personal liability for the acts of the corporation.  These principles are equally applicable when the shareholder is, in fact, another corporation. . . ."); U.S. v. Bestfoods, 524 U.S. 51, 61 (1998) ("It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries.") (citation omitted).  Further facts are required in order to hold a parent company liable as an employer.  A plaintiff must plead and later demonstrate certain facts about the nature and extent of the relationship between a parent and its subsidiary corporation.

Depending on the facts of the case, a court may apply various tests to determine the extent to which a parent company has assumed control over a subsidiary and whether the "corporate veil" should be pierced.[5]  For example, in the Title VII context, the Third Circuit

---

29 U.S.C.A. § 1002(5) (2008).

[5] Those tests are sometimes referred to as the integrated enterprise test (also known as the single employer test), the alter ego test, and the mere instrumentality test.  See Beckwith v. Int'l Mill Servs., Inc., 617 F. Supp. 187, 189 (E.D. Pa. 1985).  See also Pearson, 247 F.3d at 485 n.2

"shall deem a parent and subsidiary a single employer when the parent has directed the subsidiary to perform the allegedly discriminatory act in question. By directing such an act, the parent disregards the separate corporate existence of the subsidiary and thus forfeits the right to be treated as a separate entity." Nesbit v. Gears Unlimited, Inc., 347 F.3d 72, 86 (3d Cir. 2003). A court may also justify piercing the corporate veil "[w]here separate corporate entities are so interrelated and integrated in their activities, labor relations, and management, it is clear that . . . they may be treated as a single employer." Ratcliffe v. Ins. Co. of N. Am., 482 F. Supp. 759, 764 (E.D. Pa. 1980). This test, called the integrated enterprise test, is a labor-specific veil-piercing test for "corporate sameness" that is often used in the employment discrimination context. Pearson, 247 F.3d at 485-86.[6] A court may also seek to determine whether "the parent controls a subsidiary to such a degree that it is but a mere instrumentality of the parent, and the parent is perpetuating a wrong through the subsidiary, and an unjust result will occur if the parent is allowed to be shielded by its separate corporate existence." Beckwith, 617 F.Supp. at 189 n.4.

     Regardless of which of the aforementioned tests this Court might deem applicable to Plaintiff's claims, it would reach the same conclusion: Plaintiff has failed to allege facts by which CSS may be held liable for any purported FMLA or ERISA violations. In his Complaint, the only allegation Plaintiff makes against CSS is that CSS is the parent company of PMG, which was Plaintiff's employer. Plaintiff does not allege that CSS was his employer, as defined by the

---

("Although the tests employed to determine when circumstances justifying "veil-piercing" exist are variously referred to as the "alter ego," "instrumentality," or "identity" doctrines, the formulations are generally similar, and courts rarely distinguish them.")

[6] The integrated enterprise test was first developed by the National Labor Relations Board and has been adopted by the Department of Labor regulations for the Family Medical Leave Act. Pearson, 247 F.3d at 485-86.

FMLA or ERISA. He does not allege that CSS acted directly or indirectly through PMG to perform any of the allegedly unlawful acts. He has not alleged any facts to show that CSS and PMG were so integrated that they should be considered a single employer; and he has not alleged that CSS controls PMG to a degree that PMG is a mere instrumentality of CSS. Therefore, Plaintiff has failed to state a claim upon which relief can be granted.

### C. Plaintiff is Not Entitled to Discovery

Plaintiff contends that he needs discovery to ascertain the relationship between CSS and PMG. However, because Plaintiff's Complaint is devoid of any facts that could attach liability to CSS, Plaintiff is not entitled to discovery.

### V. Conclusion

Because Plaintiff has failed to state a claim upon which relief can be granted on his claims against CSS, CSS' Motion for Judgment on the Pleadings will be granted in its entirety.

An appropriate Order follows.